IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MAGGIE STARR,  )<br>)<br>　Plaintiff,　)<br>)<br>v.　)<br>)<br>DEPARTMENT OF THE AIR FORCE,  )<br>*et al.*,　)<br>)<br>　Defendants.　)<br>) | Civil Action No. 22-cv-02029-LKG<br><br>Dated: March 27, 2024 |

**MEMORANDUM OPINION**

**I.      INTRODUCTION**

In this employment discrimination matter, Plaintiff *pro se*, Maggie R. Starr, alleges that Defendant, the United States Department of the Air Force (the "Air Force"), discriminated against her upon the bases of race, color, and sex, by declining to give her a permanent classroom assignment and terminating her employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq* ("Title VII").[1]  *See generally*, ECF No. 28-1.  The Air Force has moved to dismiss the amended complaint, or, alternatively, for summary judgment in its favor, pursuant to Fed. R. Civ. P. 12(b)(6) and 56.  *See generally*, ECF No. 32.  The motion is fully briefed.  ECF Nos. 32, 39, 40.  No hearing is necessary to resolve the motion.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court: (1) **GRANTS** the Air Force's motion to dismiss and (2) **DISMISSES** the amended complaint.

---

[1] Plaintiff's original complaint also asserts claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA").  *See* ECF Nos. 1, 3.  The Court does not read Plaintiff's amended complaint to assert age discrimination claims under the ADEA.  ECF No. 28-1.

## II. FACTUAL AND PROCEDURAL BACKGROUND[2]

### A. Factual Background

In this employment discrimination matter, Plaintiff alleges that the Air Force discriminated against her, upon the bases of race, color, and sex, by declining to give her a permanent classroom assignment and terminating her employment with the JP Hoyer Child and Youth Development Center (the "Center"), in violation of Title VII. *See generally*, ECF No. 28-1. Specifically, Plaintiff alleges that the Air Force discriminated against her by retaining her on "floater" status during a 12-month probationary employment period and later terminating her employment with the Center. *See generally*, ECF Nos. 28-1, 28-2. As relief, Plaintiff seeks reinstatement to her position with the Center, and to recover monetary damages, costs, and attorney's fees from the Air Force. ECF No. 28-2 at 3-4.

<u>The Parties</u>

Plaintiff, Maggie R. Starr, is an African American female with dark complexion, who resides in White Plains, Maryland. ECF No. 28-1 at 2, 5.

Defendant, the United States Department of the Air Force, employed Plaintiff in various positions for more than 19 years, most recently as a child and youth program assistant with the Center. ECF No. 28-2 at 1-2.

<u>Plaintiff's Employment With The Air Force</u>

As background, from October 13, 2015, to October 11, 2016, the Air Force employed Plaintiff as a child and youth program assistant with the Center, located at Joint Base Andrews. *Id*. at 2. When Plaintiff began her employment with the Center, the Air Force required that she complete a background check and receive a "favorable" result, as a condition to maintaining her employment. *Id*.

Plaintiff was initially employed by the Air Force for a 12-month probationary period, during which she was assigned to a preschool community and used as a "floater," meaning that she was not permanently assigned to a particular classroom. *Id*. at 2-3; ECF No. 3-3 at 1. It is undisputed that the Air Force did not assign Plaintiff to a permanent classroom during her

---

[2] The facts recited herein are taken from the amended complaint, the Air Force's dispositive motion, and the memorandum in support thereof. ECF Nos. 28-1, 32, 32-1. Unless otherwise stated, the facts contained in this memorandum opinion are undisputed.

2

employment at the Center. ECF No. 28-2 at 3; ECF No. 32-1 at 11. It is also undisputed that a receipt of a "favorable" background check was a condition of Plaintiff's continued employment with the Center. ECF No. 3-3 at 1; ECF No. 32-1 at 12.

During her 12-month probationary period, Plaintiff informed the Air Force that her background check would reveal that she had been charged with first-degree and second-degree assault in October 2002. ECF No. 28-2 at 3; ECF No. 3-3 at 1. Plaintiff explained that these charges stemmed from an incident in which her then-husband "put his hands on [her] in an inappropriate manner." ECF No. 3-3 at 2. Plaintiff alleges that she was told by the assistant director at the Center, Sharon Iriate, that the assault charges would not preclude Plaintiff from passing her background check. *Id*. at 1; ECF No. 1-22 at 2; ECF No. 28-2 at 3.

On October 11, 2016, the Air Force sent a notice of separation during probationary period to Plaintiff. ECF No. 1-9 at 1. In the notice, the Air Force advised that Plaintiff failed to satisfy all conditions of employment with the Center, because her background check result was "unfavorable." *Id*. The Air Force further advised that Plaintiff was "being separated from [her] . . . position at [the] Child Development Center on Joint Base Andrews . . . for failure to satisfactorily complete [her] probationary period." *Id*. And so, the Air Force terminated Plaintiff's employment on October 11, 2016. *Id*.

<u>Plaintiff's EEO Complaint</u>

On January 11, 2017, Plaintiff filed a formal complaint of discrimination with the 11th Wing Equal Opportunity Office at Joint Base Andrews. *See generally*, ECF No. 32-3. In the charge of discrimination, Plaintiff alleged that "I . . . believe that I have and [was] discriminated [against] due to my being an African American that is dark in complexion and 52 years of age." ECF No. 32-1 at 8.

On February 2, 2017, the Air Force informed Plaintiff that it would investigate the following issues raised in her charge of discrimination:

> Whether on 11 October 2016, the complainant, Ms. Maggie R. Starr, was discriminated against . . . on the basis of Race (African-American), Color (dark in complexion) and Age (02/24/1964), when she received a notice of separation one day prior to the expiration of her probationary period at the Child Development Center based on adverse information, from a 2002 event, revealed during the background investigation although previously disclosed by complainant to the former assistant director who advised that it would not be a problem.

ECF No. 32-3 at 1. During the investigation, Center Director Chandre Coleman stated in a

3

sworn declaration that she made the decision to find that Plaintiff's background check was unfavorable, because "assault charges are viewed as unfavorable[,] and an employee must be able to obtain a favorable background [check]." ECF No. 32-5 at 2. And so, Ms. Coleman also stated that, if "employees cannot obtain a favorable background check, [Ms. Coleman] cannot retain them." *Id*. at 3.

Following the investigation, the Equal Employment Opportunity Commission ("EEOC") Cleveland Field Office found that the record evidence did not establish any discrimination by the Air Force Department towards Plaintiff, and denied Plaintiff's claims. *See* ECF No. 32-8. On January 25, 2022, the EEOC's Office of Federal Operations affirmed the finding of no discrimination. *See* ECF No. 32-9. Plaintiff's request for reconsideration was subsequently denied on May 16, 2022. *See* ECF No. 32-10.

Plaintiff's Allegations

In the amended complaint, Plaintiff alleges that the Air Force discriminated against her upon the bases of race, color, and sex, by declining to permanently assign her to a classroom and terminating her employment with the Center. ECF No. 28-2 at 2. To support her claims, Plaintiff identifies other Center employees who she alleges were treated more favorably than she was by the Air Force, despite having failed to successfully complete a background check during the 12-month probationary period.

First, Plaintiff alleges that another Center employee, Monique Robinson-Brown, an African American woman with brown skin, received a permanent classroom placement while Plaintiff did not. *Id*. In this regard, Plaintiff alleges that Ms. Robinson-Brown received the permanent classroom assignment despite having exceeded the 12-month probationary period without receiving a favorable background check. *Id*.

Second, Plaintiff alleges that several other unnamed employees, who were hired by the Air Force after her, received permanent classroom assignments even if their background checks were not yet complete. In this regard, Plaintiff contends that these other employees "were much younger in age," had "various [tones] of Color Light and Dark Skin[,]" were Hawaiian and African American, and were male and female alike. *Id*.

Lastly, Plaintiff alleges that the Air Force treated another Center employee, Donte Holt, who is an African American male with light skin, more favorably than her, by offering him post-probation employment at the Center, despite the fact that Mr. Holt had a driving under the

influence ("DUI") charge on his record. *Id*. at 3.

As a final matter, Plaintiff alleges that Ms. Coleman "made insulting comments" concerning Plaintiff's hair, by describing her "[n]atural [t]wo [s]tring" hairstyle as "manageable," on August 19, 2016. *Id*.; ECF No. 3-3 at 2.

### B.     Procedural History

Plaintiff commenced this civil action on August 12, 2022. *See generally*, ECF No. 1. Plaintiff filed an amended complaint on June 30, 2023. ECF Nos. 28, 28-1.

On August 16, 2023, the Air Force filed a renewed motion to dismiss, or, alternatively, for summary judgment, pursuant to Fed. R. Civ. P. 12(b)(6) and 56. ECF No. 32.

Plaintiff filed a response in opposition to the Air Force's dispositive motion on September 25, 2023. ECF No. 39. The Air Force filed a reply brief on October 3, 2023. ECF No. 40.

The Air Force's dispositive motion having been fully briefed, the Court resolves the pending motion.

## III.    LEGAL STANDARDS

### A.     *Pro Se* Litigants

Plaintiff is proceeding in this matter without the assistance of counsel. And so, the Court must construe the amended complaint liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980). But, in doing so, the Court cannot disregard a clear failure to allege facts setting forth a cognizable claim. *See United States v. Wilson*, 699 F.3d 787, 797 (4th Cir. 2012); *see also Bell v. Bank of Am., N.A.*, 2013 WL 6528966, at *1 (D. Md. Dec. 11, 2013) ("Although a *pro se* plaintiff is general[ly] given more leeway than a party represented by counsel . . . a district court is not obliged to ferret through a [c]omplaint . . . that is so confused, ambiguous, vague [,] or otherwise unintelligible that its true substance, if any, is well disguised.") (quotations omitted). And so, if Plaintiff fails to allege sufficient facts setting forth a cognizable claim, the Court must dismiss the complaint.

### B.     Fed R. Civ. P. 12(b)(6) and (d)

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible

5

when "the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When evaluating the sufficiency of a plaintiff's claims under Rule 12(b)(6), the Court accepts factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet, Inc. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Lambet v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005) (citations omitted). But the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." *Nemet Chevrolet*, 591 F.3d at 255. And so, the Court should grant a motion to dismiss for failure to state a claim if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *GE Inv. Priv. Placement Partners II, L.P. v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (quoting *H.J. Inc. v. Nw Bell Tel. Co.*, 492 U.S. 229, 249-50 (1989)).

Lastly, a motion to dismiss under Fed. R. Civ. P. 12(b)(6) "must be treated as one for summary judgment" when "matters outside of the pleadings are presented" to the Court. *See* Fed. R. Civ. P. 12(d). But, the United States Court of Appeals for the Fourth Circuit has held that documents are not considered to be matters outside of the pleadings if they are "explicitly incorporated into the complaint by reference," or are "integral to the complain and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Tellabs, Inv. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

C.     **Fed R. Civ. P. 56**

A motion for summary judgment filed pursuant to Rule 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; see also *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).

6

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. See *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*. at 323. And so, for those issues on which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. See *Anderson*, 477 U.S. at 256

In this regard, the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). In addition, conclusory assertions of a defendant's state of mind and motivation are not enough to withstand summary judgment. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988); *see also Foreman v. Weinstein*, 485 F. Supp. 2d 608, 612 (D. Md. 2007) ("[A] subjective, even if genuine, belief of discrimination will not shield a nonmoving plaintiff from a grant of summary judgment."). Rather, a plaintiff must advance specific material evidentiary facts, not unsupported speculation. *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986)

### D.    Title VII Claims

Title VII prohibits employment discrimination based on race, color, religion, sex, and national origin. *See* 42 U.S.C. § 2000e. Title VII requires that a plaintiff file a charge of discrimination with the EEOC before filing suit in federal court. *Id*. § 2000e-5(f)(1) (permitting civil suit by the "person claiming to be aggrieved" after the filing of a charge with the EEOC and

upon receipt of a right-to-sue letter); *see also Puryear v. Cnty of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000) ("[T]he aggrieved person may initiate a civil action based on the Title VII claims made in her EEOC charge only after receipt of a right-to-sue letter."). And so, this "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

Title VII requires that an aggrieved party file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). Relevant here, the Fourth Circuit has long held that this Court cannot consider matters that were not properly raised during the EEOC process, even when a plaintiff filed a timely claim with the EEOC. *See, e.g., Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'"); *Miles*, 429 F.3d at 491;[3] *see also Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005); *Hubbard v. Rubbermaid, Inc.*, 436 F. Supp. 1184, 1189 (D. Md. 1977) (if a Title VII suit were not limited to the administrative charged, it would permit the "[u]nrestrained expansion of the scope of Title VII," resulting ultimately in the destruction of its remedial aspects). And so, Plaintiff may only advance those claims which are "reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation" in this employment discrimination matter. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000).

There are two methods for proving intentional discrimination in employment under Title VII: (1) through direct evidence of intentional discrimination or (2) through circumstantial evidence under the *McDonnell Douglas* burden-shifting scheme. Relying on the former, a plaintiff may utilize "ordinary principles of proof using any direct . . . evidence relevant to and

---

[3] To determine whether a plaintiff has "properly alleged [a claim] before the EEOC" in a manner satisfying the exhaustion requirement, courts "may look only to the charge filed with the agency." *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 408 (4th Cir. 2013); *see also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d, 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to *limit the scope* of any subsequent judicial complaint.") (emphasis added); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) ("This charge frames the scope of future litigation.").

8

sufficiently probative of the issue." *Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606-07 (4th Cir. 1999) (quoting *Tuck v. Henkel Corp.*, 973 F.2d 371, 374 (4th Cir. 1992)). The Fourth Circuit has held that direct evidence of discrimination is that which demonstrates the defendant "'announced, or admitted, or otherwise unmistakably indicated that the [discriminatory consideration] was a determining factor.'" *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023) (resolving an intentional discrimination claim in the ADEA context) (citation omitted). And so, a plaintiff must provide "'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.'" *Brinkley*, 180 F.3d at 607 (quoting *Fuller v. Phipps*, 67 F.3d 1137, 1142 (4th Cir. 1995)).

If the plaintiff cannot point to direct evidence of intentional discrimination in the employment context, she may proceed under the *McDonnell Douglas* burden-shifting framework. *See Tuck*, 973 F.2d at 374. Under this framework, a plaintiff must first establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). "[T]he precise formulation of the required *prima facie* showing will vary in 'differing factual situations.'" *Hemphill v. ARAMARK Corp.*, 2014 WL 1248296, at *9 (D. Md. Mar. 25, 2014). Specifically relevant to this employment discrimination dispute, a plaintiff may establish a *prima facie* case of discrimination by showing: (1) her membership in a class protected by Title VII; (2) her satisfactory job performance; (3) that she was subjected to an adverse employment action; and (4) that other similarly situated employees who were not in the protected class were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802. The failure to demonstrate one of these required elements is fatal to a plaintiff's ability to establish a *prima facie* case. *See Hemphill*, 2014 WL 1248296, at *19.

If a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse action alleged. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)) (holding the *McDonnell Douglas* framework applies to ADEA actions as well as those brought under Title VII). If the defendant succeeds in doing so, that showing will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case. *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10). The plaintiff then must "prove by a

9

preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253. And so, "[t]he plaintiff always bears the ultimate burden of proving that the employer intentionally discriminated against her." *Evans*, 80 F.3d at 959 (citing *Burdine*, 450 U.S. at 253).

### IV.  ANALYSIS

The Air Force has moved to dismiss this matter, or, alternatively, for summary judgment in its favor, pursuant to Fed. R. Civ. P. 12(b)(6) and 56, upon several grounds. First, the Air Force argues that Plaintiff fails to state plausible Title VII discrimination claims in this matter, because she: (1) did not exhaust administrative remedies with regards to her sex discrimination claim; (2) fails to allege sufficient facts to show race, color, and sex were the bases of the Air Force's decisions not to assign her to a permanent classroom and to terminate her employment; (3) fails to allege facts to show that her job performance was satisfactory; (4) fails to allege facts to show that declining to grant a permanent classroom assignment is an adverse employment action; and (5) fails to allege facts to show that similarly situated employees received more favorable treatment. ECF No. 32-1 at 7-13. In addition, the Air Force argues that the amended complaint fails to satisfy the minimum standards needed for this litigation to proceed. *Id*. at 15-16. And so, the Air Force requests that the Court either dismiss this matter, or enter summary judgment in its favor.

Plaintiff does not substantively respond to many of the Air Force's arguments in her response in opposition. *See generally*, ECF No. 39. Nonetheless, Plaintiff argues that she has exhausted her administrative remedies and that the Air Force has discriminated against her upon the bases of race, color, and sex, by declining to assign her to a permanent classroom and terminating her employment on October 11, 2016. *Id*. at 9-12. And so, Plaintiff requests that the Court deny the Air Force's dispositive motion. *Id*. at 12.

For the reasons that follow, a careful reading of the amended complaint shows that Plaintiff failed to exhaust her administrative remedies with respect to her sex discrimination claim. The amended complaint also makes clear that Plaintiff cannot show either intentional discrimination by the Air Force, or that her job performance was satisfactory, to prevail on her

10

Title VII discrimination claims in this case. And so, the Court (1) GRANTS the Air Force's motion to dismiss and (2) DISMISSES the complaint.[4]

### A. Plaintiff Failed To Exhaust Her Sex Discrimination Claim

As an initial matter, the Air Force persuasively argues that the Court should dismiss Plaintiff's sex discrimination claim in this case, because Plaintiff did not exhaust her administrative remedies with respect to that claim before commencing this litigation. ECF No. 32-1 at 7-9. Title VII requires that Plaintiff file a charge of discrimination with the EEOC before commencing this litigation. 42 U.S.C. § 2000e-5(f)(1) (permitting civil suit by the "person claiming to be aggrieved" after the filing of a charge with the EEOC and upon receipt of a right-to-sue letter); *see also Puryear v. Cnty of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000) ("[T]he aggrieved person may initiate a civil action based on the Title VII claims made in her EEOC charge only after receipt of a right-to-sue letter."). This "exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

In this regard, the Fourth Circuit has long held that this Court cannot consider matters that were not properly raised during the EEOC process. *See, e.g., Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("'Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'"); *Miles*, 429 F.3d at 491; *see also Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005); *Hubbard v. Rubbermaid, Inc.*, 436 F. Supp. 1184, 1189 (D. Md. 1977) (if a Title VII suit were not limited to the administrative charge, it would permit the "[u]nrestrained expansion of the scope of Title VII," resulting ultimately in the destruction of its remedial aspects). And so, Plaintiff may only advance those claims which are "reasonably related to [the] EEOC charge and can be expected to follow from a reasonable administrative investigation" in this employment discrimination matter. *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000).

---

[4] To the extent the Court relies on evidence beyond that in the amended complaint to resolve the Air Force's motion, the Court treats the motion as one for summary judgment under Fed. R. Civ. P. 56.

In this case, a careful review of Plaintiff's January 11, 2017, complaint of discrimination shows that she did not raise a sex discrimination claim during the administrative proceedings before the Air Force and the EEOC. Rather, the complaint of discrimination states that "I . . . believe that I have and [was] discriminated [against] due to my being an African American that is dark in complexion and 52 years of age." ECF No. 32-1 at 8. The Air Force's February 2, 2017, notice to Plaintiff accepting her complaint of discrimination similarly makes clear that the Air Force would investigate discrimination claims based upon race, color, and age:

> Whether on 11 October 2016, the complainant, Ms. Maggie R. Starr, **was discriminated against . . . on the basis of Race (African-American), Color (dark in complexion) and Age (02/24/1964),** when she received a notice of separation one day prior to the expiration of her probationary period at the Child Development Center based on adverse information, from a 2002 event, revealed during the background investigation although previously disclosed by complainant to the former assistant director who advised that it would not be a problem.

ECF No. 32-3 at 1 (emphasis added). Given this, neither Plaintiff's complaint of discrimination, nor the Air Force's notice of acceptance, makes reference to a sex discrimination claim. ECF No. 32-1 at 8; ECF No. 32-3 at 1. And so, these undisputed facts make clear that Plaintiff did not raise her sex discrimination claim in her charge of discrimination.

Because Plaintiff failed to exhaust her administrative remedies with respect to her sex discrimination claim, the Court must DISMISS this claim.

### B. Plaintiffs Cannot Prevail On Her Race And Color Discrimination Claims
#### 1. Plaintiffs Fail To Allege Facts To Show Discriminatory Intent

The Court also agrees with the Air Force that Plaintiff's remaining discrimination claims in this civil action are not plausible. To state a discrimination claim in this matter, Plaintiff must sufficiently allege facts to show direct evidence of discriminatory intent or evidence of discrimination under the *McDonnell Douglas* burden-shifting framework. Plaintiff must prove discriminatory intent by alleging facts in the amended complaint to allow for a reasonable inference that the Air Force treated her adversely because of her race and/or color. *See McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585-86 (4th Cir. 2015). The amended complaint, when construed in the light most favorable to Plaintiff, fails to give rise to a reasonable inference of discrimination for several reasons.

First, the amended complaint lacks sufficient facts to show that Plaintiff's race or color was the reason for the Air Force's decision not to give her a permanent classroom assignment and to ultimately terminate Plaintiff's employment. In the amended complaint, Plaintiff alleges that the Air Force declined to assign her to a permanent classroom during her 12-month probationary period with the Center, while providing several other employees with permanent classroom assignments, even though those individuals had not yet passed their background checks. ECF No. 28-2 at 2-3.

To support these claims, Plaintiff alleges that another Center employee, Monique Robinson-Brown, an African American woman with brown skin, received a permanent classroom placement despite having exceeded the 12-month probationary period without receiving a favorable background check. *Id*. at 2. Plaintiff also alleges that multiple other employees, who were hired by the Air Force after her, received permanent classroom assignments, even though their background checks were not yet complete. *Id*. Plaintiff describes these unidentified employees as "much younger in age," having "various [tones] of Color Light and Dark Skin [sic][,]" and being Hawaiian and African American. *Id*.

In addition, Plaintiff contends that the Air Force treated another Center employee, Donte Holt, who is an African American male with light skin, more favorably than her, by offering him post-probation employment at the Center, despite the fact that he had a DUI charge on his record. *Id*. at 3. Lastly, Plaintiff alleges that the Center's director, Chandre Coleman, "made insulting comments" concerning Plaintiff's hair, by describing her "[n]atural [t]wo [s]tring" hairstyle as "manageable," on August 19, 2016. *Id*.; ECF No. 3-3 at 2.

Taken as true, these factual allegations are simply not sufficient to establish an inference that the Air Force intentionally discriminated against Plaintiff upon the bases of her race and color. *See McCleary-Evans*, 780 F.3d at 585-86. While it is undisputed that Plaintiff is an African American woman with dark complexion, and, thus, a member of a protected class, the factual allegations in the amended complaint neither show, nor allow for the reasonable inference that, the Air Force's decisions not to provide Plaintiff with a permanent classroom assignment and to terminate her employment were because of Plaintiff's race or color. ECF No. 28-1 at 5. Rather, Plaintiff acknowledges in the amended complaint that receiving a favorable background check was a condition of her employment with the Center. ECF No. 28-2 at 2-3; ECF No. 3-3 at

13

1.  Plaintiff also concedes that prior charges for first-degree and second-degree assault were disclosed to the Air Force during her background check. ECF No. 28-2 at 3; ECF No. 3-3 at 1.

The amended complaint also makes clear that the Air Force declined to grant Plaintiff a permanent classroom assignment, and ultimately terminated her employment at the Center, because Plaintiff did not receive a favorable background check due to the assault charges contained in her record. *See* ECF No. 28-2 at 2; ECF No. 3-3 at 2. Notably, Ms. Coleman stated during the investigation of Plaintiff's complaint of discrimination that she decided that Plaintiff's background check was unfavorable, because "assault charges are viewed as unfavorable[,] and an employee must be able to obtain a favorable background [check]." ECF No. 32-5 at 2. And so, Ms. Coleman concluded that she could not retain Plaintiff without a favorable background check. *Id.* at 3.

The fact that Plaintiff believed that the subject assault charges would not impact her ability to pass a background check, and to obtain a permanent classroom assignment with the Center, does not negate the undisputed facts showing that Plaintiff's unfavorable background check was the reason the Air Force terminated her employment. ECF No. 28-2 at 3; ECF No. 3-3 at 2. Given this, Plaintiff fails to establish a reasonable inference that the Air Force discriminated against her on the bases of race or color, by declining to assign Plaintiff to a permanent classroom and terminating her employment.[5] And so, the Court must also DISMISS Plaintiff's race and color discrimination claims.

### 2. Plaintiff Cannot Show A Satisfactory Job Performance

The discrimination claims in this case also fail because Plaintiff cannot show that her job performance was satisfactory to establish a *prima facie* case of discrimination under *McDonnell Douglas*. To prevail on her discrimination claims, Plaintiff must show: (1) her membership in a class protected by Title VII; (2) her satisfactory job performance; (3) that she was subjected to an

---

[5] Plaintiff's allegation that Chandre Coleman "made insulting comments" about her hair, by describing her "[n]atural [t]wo [s]tring" hairstyle as "manageable," is also insufficient to create a reasonable inference of intentional discrimination. *See* ECF No. 28-2 at 3. Plaintiff fails to explain how this comment shows she was treated adversely because of her race or color. *See generally*, ECF No. 39. Plaintiff also argues that her "work performance was indicated as being admirable" by a supervisor. ECF No. 28-2 at 2. But, Plaintiff does not dispute receiving an unfavorable background check result. *See generally*, ECF No. 39.

adverse employment action; and (4) that other similarly situated employees who were not in the protected class were treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). And so, Plaintiff must establish, among other things, that her job performance at the Center was satisfactory. *Id*.

The undisputed facts in this case show, however, that Plaintiff was not performing satisfactorily when the Air Force declined to assign her to a permanent classroom and terminated her employment. Plaintiff acknowledges in this action that a favorable background check was a condition of her employment with the Center and that she did not receive such a favorable background check, due to the prior assault charges on her record. *See* ECF No. 28-2 at 2; ECF No. 1-9 at 1. While Plaintiff understandably disagrees with the Air Force's decisions not to assign her to a permanent classroom and to terminate her employment due to the results of the background check, the Fourth Circuit has made clear that Title VII is not a "vehicle for substituting the judgment of a court for that of the employer."[6] *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998).

Because Plaintiff received an unfavorable background check, there can be no genuine dispute that she failed to meet a mandatory condition of her employment with the Center. Given this, Plaintiff was not performing her job in a satisfactory manner when the Air Force declined to assign her to a permanent classroom and ultimately terminated her position. For this independent reason, the Court must also DISMISS Plaintiff's discrimination claims.

## V.  CONCLUSION

In sum, a careful reading of the amended complaint demonstrates that Plaintiff failed to exhaust her administrative remedies with respect to her sex discrimination claim. The amended complaint also makes clear that Plaintiff fails to allege sufficient facts to show either intentional discrimination by the Air Force, or that her job performance was satisfactory, to prevail on her Title VII discrimination claims.

---

[6] Because the Court concludes that Plaintiff fails to establish a reasonable inference of intentional discrimination and to show a satisfactory job performance, the Court does not reach the other issues raised in the Air Force's dispositive motion.

And so, for the foregoing reasons, the Court:

(1) **GRANTS** the Air Force's dispositive motion; and

(2) **DISMISSES** the amended complaint.

A separate Order shall issue.

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
